**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**CASE NO.:**

**CHRISTIAN ANDERSON, on behalf of himself and all others similarly situated,**

**Plaintiff,**

**v.**

**LOCH BAR BOCA, LLC,**
**a Florida Limited Liability Company, and**
**ATLAS RESTAURANT GROUP, LLC,**
**a Maryland Limited Liability Company,**

**Defendants.**
_______________________________________/

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, **CHRISTIAN ANDERSON**, on his own behalf and on behalf of those similarly situated (collectively "Plaintiffs"), by and through their undersigned counsel, hereby files this Complaint against Defendants **LOCH BAR BOCA, LLC** ("LBB") and **ATLAS RESTAURANT GROUP, LLC** ("Atlas") (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1. This is an action brought pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. § 2101 et. seq. ("WARN Act").

2. This is a class action arising from Defendants' permanent shutdown of their Loch Bar restaurant at 346 Plaza Real, Boca Raton, Florida 33432 (the "Boca Raton Facility").

3. Plaintiffs seek the statutory back pay and employee-benefit damages occasioned by Defendants' failure to provide timely notice, together with prejudgment interest, reasonable attorneys' fees, costs, and all other relief authorized by law.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as they arise under federal law.

5. Venue is proper in the Court because all facts material to all claims set forth herein occurred in Palm Beach County, Florida.

## PARTIES

6. Plaintiff Christian Anderson is an adult individual who resides in the state of Florida.

7. Defendant LBB is a Florida Limited Liability Company that is located and does business in Palm Beach County, Florida.

8. Defendant Atlas is a Maryland Limited Liability Company that does business in Palm Beach County, Florida.

9. At all times material to this action, Plaintiffs worked for Defendants in Palm Beach County, Florida.

## WARN ACT ALLEGATIONS

10. Plaintiff and other similarly situated employees were laid off as part of plant shutdowns or mass layoffs of a single site of employment as defined by the WARN Act, for which they were entitled to receive 60 days advance written notice under the WARN Act.

11. At all relevant times, Defendants employed one hundred (100) or more employees, exclusive of part-time employees, or employed 100 or more employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States as defined by the WARN Act.

12. At all relevant times, Defendants were "employers" as that term is defined by the

WARN Act.

13. During the week of August 30, 2025, Defendants ordered "shutdowns" or "mass layoffs" as that term is defined by the WARN Act.

14. Defendants' actions at the Boca Raton Facility resulted in an 'employment loss,' as defined by 29 U.S.C. § 2101(a)(6), for at least fifty employees at the Boca Raton Facility, excluding employees who qualified as 'part-time employees' under 29 U.S.C. § 2101(a)(8), during a thirty-day period.

15. Defendants' termination of the Class Members' employment constituted plant shutdowns or mass layoffs at a single site of employment as defined by the WARN Act.

16. The Plaintiff and each of the Class Members who were employed by Defendants and then terminated by Defendants as a result of Defendants executing plant shutdowns or mass layoffs at the Boca Raton Facility were "affected employees" as defined by the WARN Act.

17. The Plaintiff and each of the Class Members are "aggrieved employees" of Defendants as that term is defined by the WARN Act.

18. Pursuant to the WARN Act, Defendants were required to provide at least 60 days prior written notice of the layoff, or notice as soon as practicable, to the affected employees, or their representative, explaining why the sixty (60) days prior notice was not given.

19. Defendants failed to give at least sixty (60) days prior notice of the layoff in violation of the WARN Act.

20. Defendants failed to pay the Plaintiff and each of the Class Members their respective unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for each day of Defendants' violation, up to sixty (60) days following the member employee's termination, that would have

been covered and paid under the then applicable employee benefit plans had that coverage continued for that period.

21. As a result of Defendants' failure to pay the wages, benefits and other monies as asserted, the Plaintiff and Class Members were damaged in an amount equal to the sum of the members' unpaid wages, accrued holiday pay, accrued vacation pay, accrued sick leave pay and benefits which would have been paid for a period of sixty (60) calendar days after the date of the their terminations.

22. All administrative notice requirements and prerequisites have been satisfied.

## CLASS ACTION ALLEGATIONS

23. Plaintiffs sue under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure for violations of the WARN Act, on behalf of themselves, and a class of employees who worked at or reported to the Defendants' Boca Raton Facility, and were laid off without cause by Defendants as part of a reasonably foreseeable result of shutdowns or mass layoffs ("Class") during the week of August 30, 2025.

24. The persons in the Class ("Class Members") are so numerous that joinder of all members is impracticable as there are, upon information and belief, approximately fifty (50) potential class members.

25. There are questions of law and fact common to the Class Members, namely:

a. Whether the Class Members were employees of Defendants who worked at or reported to Defendants' Boca Raton Facility;

b. Whether Defendants ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days advance written notice as required by the WARN Act; and

c. Whether the Defendants were subject to any of the defenses provided for in the WARN Act;

26. The claims of the representative Plaintiff are typical of the claims of the Class, as he was laid off as part of the shutdown or mass layoff, and did not receive the requisite notice.

27. The representative Plaintiff will fairly and adequately protect the interests of the class.

28. The named Plaintiff retained counsel competent and experienced in complex class action employment litigation.

29. A class action is superior to other available methods for the fair and efficient adjudication of this controversy—particularly in the context of WARN Act and wage litigation – where the individual Plaintiff and class members may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants and separate actions would create a risk of inconsistent or varying adjudications with respect to individual class members and the adjudications with respect to individual class members would be dispositive of the interests of other members.

30. Defendants have acted on grounds that apply generally to the class.

31. There are questions of law and fact common to the Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

a. Whether the Class Members were employees of Defendants who worked at or reported to Defendants' Boca Raton Facility;

b. Whether Defendants ordered the termination of employment of each of the Class Members without cause on their part and without giving them 60 days advance written notice as required by the WARN Act; and

c. Whether Defendants were subject to any of the defenses provided for in the WARN Act.

**JOINT EMPLOYER ALLEGATIONS**

32. Although LBB and Atlas are nominally separate entities, they operated as a single integrated business enterprise and jointly employed Plaintiff and the Class Members for purposes of the WARN Act.

33. Upon information and belief, Atlas directly or indirectly owns and controls LBB, which operated the Boca Raton Facility as part of Atlas's nationwide portfolio of restaurants.

34. Atlas publicly represented the Boca Raton Facility as an Atlas Restaurant Group restaurant and marketed Loch Bar–Boca Raton together with Atlas's other restaurant locations and concepts.

35. Atlas also recruited employees for the Boca Raton Facility through its centralized Atlas Restaurant Group hiring platform, on which "Loch Bar–Boca" was identified as an Atlas Restaurant Group employment location.

36. Upon information and belief, Atlas and LBB shared common officers, managers, and other corporate decision makers responsible for overseeing the Boca Raton Facility.

37. Upon information and belief, Atlas exercised centralized control over material aspects of the Boca Raton Facility's operations, including budgeting, branding, marketing, management oversight, employee benefits, human-resources administration, and labor and employment policies.

38. Upon information and belief, employment policies applicable to Plaintiff and the Class Members emanated from Atlas or from centralized personnel and human-resources personnel acting on behalf of Atlas and its restaurant subsidiaries.

39. Atlas presented the employment relationship to employees and prospective employees as employment with "Atlas Restaurant Group," including by offering centralized employment benefits, training, restaurant discounts, and opportunities for advancement among Atlas-operated restaurants.

40. Upon information and belief, the Boca Raton Facility depended upon Atlas for corporate services and operational support, including human resources, payroll or payroll administration, employee benefits, accounting, marketing, information technology, purchasing, and management oversight.

41. Upon information and belief, LBB lacked sufficient independent corporate personnel and infrastructure to perform these functions without Atlas and did not operate at arm's length from Atlas.

42. Upon information and belief, Atlas exercised de facto control over the employment practice giving rise to this action because Atlas participated in, approved, directed, or possessed final authority over the decision to permanently close the Boca Raton Facility and terminate its workforce.

43. Upon information and belief, Atlas and LBB jointly determined whether, when, and how notice of the closing would be provided to Plaintiff, the Class Members, and the governmental recipients identified by the WARN Act.

44. Atlas's involvement exceeded the ordinary oversight associated with passive ownership and extended to the operations, personnel policies, and closure decision at issue in this action.

45. Accordingly, Atlas and LBB constituted a single employer and business enterprise under 20 C.F.R. § 639.3(a)(2), and their employees must be aggregated when determining WARN

coverage.

## FACTUAL ALLEGATIONS

46. Plaintiff worked for Defendants as a Bartender from on or about July 1, 2023, until the Boca Raton Facility was permanently shut down by Defendants.

47. On Wednesday, August 27, 2025, the general manager of the Boca Raton Facility posted a message in an employee group chat announcing an 'All Hands Meeting' for Friday, August 29, 2025.

48. The message asked employees to attend if they could but acknowledged the meeting had been scheduled on short notice.

49. The message did not advise employees that the restaurant would close, that their employment would end, or that their benefits would terminate.

50. At approximately 4:00 p.m. on August 29, 2025, the general manager convened the meeting and told the workforce that the Boca Raton Facility would cease all operations after Saturday, August 30, 2025.

51. The general manager told the employees that they would no longer be employed by Defendants after August 30, 2025 and that their health and dental benefits would expire effective September 1, 2025.

52. Plaintiff Christian Anderson asked whether the closing had been under consideration and, if so, why employees had received no advance warning.

53. The general manager responded that he could not discuss the matter.

54. Defendants permanently shut down the Boca Raton Facility after August 30, 2025 and terminated its workforce as a consequence of that shutdown.

55. Defendants did not provide Plaintiffs with an individual written WARN notice at

least sixty days before their employment loss.

56. Defendants also failed to provide timely and compliant written notice to Florida's state dislocated-worker unit and the chief elected official of the applicable unit of local government.

57. Neither the August 27 group-chat message nor the August 29 oral announcement constituted a compliant WARN notice.

58. Defendants did not give affected employees as much notice as practicable together with a written, brief statement explaining any asserted basis for reducing the sixty-day notification period.

59. The closing was not caused by a natural disaster, strike, lockout, or completion of a temporary project or facility for which the employees had been hired with the understanding that their employment was limited to the project's duration.

60. The decision to close the Boca Raton Facility was made, or became reasonably foreseeable, sufficiently in advance for Defendants to provide sufficient notice.

61. As a direct result of Defendants' violation, Anderson and the Class lost wages and employee benefits for the period during which WARN notice should have been provided.

**COUNT I: VIOLATIONS OF THE WARN ACT**

62. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 61, above.

63. Defendants are covered employers under the WARN Act.

64. Defendants ordered a plant closing at the Boca Raton Facility that resulted in an employment loss for at least fifty employees, excluding WARN-defined part-time employees, during the applicable statutory period.

65. Plaintiff and the Class were affected and aggrieved employees.

66. Defendants violated 29 U.S.C. § 2102 by failing to provide Plaintiff and the Class at least sixty days' advance written notice before their employment losses.

67. No statutory exception excuses Defendants' failure.

68. Under 29 U.S.C. § 2104(a)(1), Defendants are liable to each aggrieved employee for back pay for each day of violation at the higher of the employee's average regular rate during the last three years of employment or the employee's final regular rate, together with the value of benefits under applicable employee benefit plans, including medical expenses incurred that would have been covered, subject to the statutory limitations and permitted offsets.

69. Plaintiff and the Class are also entitled to prejudgment interest and reasonable attorneys' fees and costs under 29 U.S.C. § 2104(a)(6).

**WHEREFORE**, Plaintiff prays that this Court award the following relief:

a. An amount equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for each day of Defendants' violation, up to sixty (60) days following the member employee's termination, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

b. Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b)(3) and the WARN Act, Plaintiffs and the Other Similarly Situated Former Employees constitute a single class;

c. Designation of Plaintiff, CHRISTIAN ANDERSON, as the Class Representative;

d. Appointment of the undersigned attorneys as Class Counsel;

e. Interest as allowed by law on the amounts owed under the preceding paragraphs;

f. The reasonable attorneys' fees and the costs and disbursements the Plaintiffs incur in prosecuting this action, as authorized by the WARN Act; and

g. Such other and any other additional relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs further demand a jury trial on all issues so triable as of right.

Dated this 25th day of August, 2026.

Respectfully submitted,

***/s/ Nicholas Vimo***
Nicholas Vimo
Florida Bar No. 1029436
RICHARD CELLER LEGAL, P.A.
7951 SW 6th St, Suite 316
Plantation, Florida 33324
Telephone: (866) 344-9243
Facsimile: (954) 337-2771
E-Mail: nicholas@floridaovertimelawyer.com

*Counsel for Plaintiff*